**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

MARK FITZHENRY, individually
and on behalf of a class of all persons and
entities similarly situated,

      Plaintiffs,

vs.     Case No. 2:23-cv-03923-RMG

MEDIASPIKE, INC. and
EDUFFICIENT.COM.COM, LLC

      Defendants.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.    Plaintiff Mark Fitzhenry brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.    The Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq*.

3.    The SCTPPA prohibits a company from making a call to a South Carolina telephone number that had been registered on the Do Not Call Registry, as Mr. Fitzhenry's was prior to receiving the call.

4.    Mr. Fitzhenry alleges that Edufficient.com, LLC ("Edufficient.com") hired MediaSpike, Inc. ("MediaSpike") to generate new leads and potential customers for various universities. MediaSpike, in turn, hired First Impressions to carry out these instructions and

utilized pre-recorded messages to do so. However, the pre-recorded messages were physically dialed by Boomsourcing, Inc. ("Boomsourcing").

5.  Mr. Fitzhenry and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Fitzhenry brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Edufficient.com.

6.  A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7.  Plaintiff Mark Fitzhenry resides in Charleston County, South Carolina.

8.  Defendant Edufficient.com, LLC is a New Jersey limited liability company.

9.  Defendant MediaSpike, Inc. is a Delaware corporation.

## Jurisdiction & Venue

10. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendants.

11. The Court has specific personal jurisdiction over Edufficient.com and MediaSpike because they instructed the third parties it hired that it should generate new customers for its university in South Carolina.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the call to Mr. Fitzhenry—occurred in this District.

**Statutory Background**

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

18. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The SCTPPA

19. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

20. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

21. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C. Code § 37-21-80.

**Factual Allegations**

Call to Mr. Fitzhenry

22. Mr. Fitzhenry is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23. On April 16, 2021, Mr. Fitzhenry received a pre-recorded call on his cellular telephone number, (843) 637-XXXX.

24. The number called had been on the National Do Not Call Registry since February of 2019.

25. The pre-recorded message stated:

> I'm calling from EDU Matcher on a quality recorded line to follow up on your recent registration on youremployment.com, where you indicated you were interested in furthering your education. I'm here to help you today to determine school and education options for you from the over 35 schools with whom EDU Matcher has business relationships. I have a few questions that I need to ask to see what schools we can find for you. I'll be really quick. Okay?

26. Boomsourcing dialed this call.

27. Boomsourcing did so with a pre-recorded message, as there was a long pause and a robotic voice was speaking.

28. First Impressions approved the pre-recorded script used by Boomsourcing.

29. Mr. Fitzhenry had not registered on "youremployment.com".

30. The company was not properly identified in the pre-recorded message, so Mr. Fitzhenry responded to the recorded message.

31. During the subsequent sales pitch, Mr. Fitzhenry spoke with a representative from Ancora and Miller-Motte Technical College, a college client that hired Edufficient.com to generate leads.

32. Mr. Fitzhenry had no prior relationship with either company and did not provide his prior express written consent.

**Edufficient.com and MediaSpike's Liability for First Impression's Conduct**

33. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

34. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

35. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

36. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that entities such as Edufficient.com and MediaSpike may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

43. Edufficient.com and MediaSpike knowingly and actively accepted business that originated through the illegal telemarketing call from Boomsourcing.

44. Indeed, MediaSpike instructed First Impressions on the use of the pre-recorded technology.

45. Edufficient.com and MediaSpike had the ability to identify the fact that First Impressions was calling individuals on the National Do Not Call Registry.

46. Indeed, despite the fact that First Impressions has received repeated complaints alleging violations of the TCPA, MediaSpike continued to work with First Impressions.

47. Edufficient.com and MediaSpike gave interim instructions to First Impressions by providing (a) information regarding the type of candidates they could call, including level of education, types of education an individual would be interested in, and (b) the script that First Impressions would have to use.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent

authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

49. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

50. The classes of persons Plaintiff propose to represent are tentatively defined as:

PRE-RECORDED CELL PHONE CLASS

> All persons within the United States to whom (a) Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) using an artificial or prerecorded voice; (c) to a phone registered to a cellular telephone service or any other service for which the person is charged for the call; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

SCTPPA CLASS:

> All persons with a South Carolina area code to whom (a) at any time from May 18, 2018 (b) Defendants, or someone acting on their behalf (c) placed at least one telephone solicitation to a number registered on the National Do Not Call Registry.

51. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The classes as defined above are identifiable through phone records and phone number databases that will be obtained through discovery.

53. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

54. Plaintiff is a member of both classes.

55. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether the Defendants violated the TCPA by using pre-recorded telemarketing to call cellular phones;

    b. Whether the Defendants placed calls without obtaining the recipients' prior consent for the call;

    c. Whether the Defendants violated the SCTPPA by making calls to South Carolina telephone numbers registered with the National Do Not Call Registry; and

    d. Whether Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

56. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

57. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58. In fact, the Plaintiff have foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

59. The actions of the Defendants are generally applicable to the classes and to the Plaintiff.

60. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

61. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)

62. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the class using an artificial or prerecorded voice.

64. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violation of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the classes presumptively are entitled to an award of $500 in damages for each and every call made using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

65. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the class are entitled to an award of up to treble damages.

66. Plaintiff and members of the classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers or numbers for which the recipient is charged for the call using an artificial or prerecorded voice in the future.

## Count Two:
## Violation of the SCTPPA

67. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

68. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to an area code of the state of South Carolina to a number that is registered on the National Do Not Call Registry.

69. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA, as well as attorneys' fees and costs. S.C. Code § 37-21-80.

## **Relief Sought**

For themselves and all class members, Plaintiff request the following relief:

A. Certification of the proposed classes;

B. Appointment of the Plaintiff as representatives of the classes;

C. Appointment of the undersigned counsel as counsel for the classes;

D. A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and SCTPPA;

E. An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the classes of damages, attorneys' fees, and costs, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this 9th day of August, 2023.

                                        PLAINTIFF,
                                        By his attorneys,

By:     _s/ Dave Maxfield_____
        David A. Maxfield, SC Bar # 7163
        P.O. Box 11865
        Columbia, SC 29211
        803-509-6800
        855-299-1656 (fax)
        dave@consumerlawsc.com

        Anthony I. Paronich
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        (508) 221-1510
        anthony@paronichlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2023, a copy of the foregoing was filed through the Court's CM/ECF System.

                                        _s/ Dave Maxfield_____
                                        David A. Maxfield, SC Bar # 7163